# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT NASHVILLE
July 21, 2010, Session

## STATE OF TENNESSEE v. WILLIAM ALEXANDER BEASLEY, IV

**Direct Appeal from the Circuit Court for Smith County**
**No. 07-82     David E. Durham, Judge**

---

**No. M2009-02605-CCA-R3-CD - Filed November 24, 2010**

---

The Defendant, William Alexander Beasley, IV, pled guilty to aggravated assault, a Class C felony, with the trial court to determine the length and manner of service of his sentence. After a hearing, the trial court ordered the Defendant to serve six years in the Tennessee Department of Correction. The Defendant appeals, contending the trial court: (1) erred when it denied his request for an alternative sentence; and (2) failed to properly apply pre-trial jail credit to his sentence. After a thorough review of the record and applicable law, we affirm the sentence of incarceration, but we remand for the entry of a corrected judgment that includes jail credits of 205 days.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed in Part and Remanded**

ROBERT W. WEDEMEYER, J., delivered the opinion of the court, in which JERRY L. SMITH and ALAN E. GLENN, JJ., joined.

G. Frank Lannon and Melanie R. Bean, Lebanon, Tennessee, for the Appellant, William Alexander Beasley, IV.

Robert E. Cooper, Jr., Attorney General and Reporter; Michael E. Moore, Solicitor General; Sophia S. Lee, Assistant Attorney General; Tom P. Thompson, District Attorney General; Howard Chambers, Assistant District Attorney General, for the Appellee, State of Tennessee.

## OPINION
### I. Facts

During the Defendant's plea submission hearing, the State set forth the following summary of the factual basis for the Defendant's guilty plea to aggravated assault:

> On [May 31, 2007,] this Defendant along with his two brothers, Matthew and
> Danny Ryan, and a fourth gentlemen, picked up the victim in this case and
> took him out to the Defeated Creek area here in Smith County, and after they
> got out of the car they proceeded to jump him, and they beat him to the extent
> that he suffered a broken jaw in three places. There were kicks. Basically just
> left him there.
>
> There were people that witnessed it at that time and various statements
> were taken from the Defendants. I can't specifically recall if this Defendant
> gave a statement or not, but the victim can ID him as being a participant in it
> and there were people that had witnessed it and would testify that he
> participated in it.

Based upon this conduct, the Defendant pled guilty to aggravated assault, with the trial court to determine the length and manner of service of his sentence.

The following evidence was presented during the Defendant's sentencing hearing: The Defendant was twenty-three at the time of the offense and twenty-five at the time of his sentencing hearing. The presentence report introduced by the State included statements from the Defendant and the victim describing the events surrounding the offense. According to the victim's statement, he, the Defendant and his brothers, and a man named Greg Webb were all originally close friends. A few months before this offense, the victim was present when Webb was fatally shot in the head. He was still grieving this loss when the Defendant and his brothers called him, inviting him to hang out with them at a nearby park. Having no suspicion that the men were angry about his involvement in Webb's death, the victim agreed to go with the men. According to the victim, the men drove him to a park where several other people were already present. Immediately after the victim stepped out of the car, the Defendant struck him in the back of the head. The Defendant's brothers began to beat the victim as well, using their hands and feet to strike the victim in his face and body, telling the victim "this is for Greg!" Once the victim lay motionless on the ground, the Defendant and his brothers got back in their vehicles and drove away. A bystander took the victim to a hospital, where life-saving procedures were performed on him. The victim eventually underwent numerous surgeries to repair his facial injuries. Though his facial structure has been restored, the victim has nerve damage in his face. The victim testified that he still struggled with anxiety and a lack of trust, given that he was lured by men he believed were his close friends into a nearly fatal attack.

According to the Defendant's statement, the victim's grandfather, a drug-dealer, killed Webb in the victim's presence during a drug deal. As the Defendant and his brothers drove

2

around drinking alcohol, they began discussing the victim's role in Webb's death. They decided to confront the victim about Webb's death, so they asked a friend, Matt Taylor, to pick up Webb and bring him to meet them. When Taylor arrived with the victim, the men, including the victim, continued to drink. When someone suggested buying marijuana, the victim said he had just smoked marijuana before meeting them. The group rode in Taylor's car to a nearby park. On the way to the park, the Defendant and his brothers confronted the victim about Webb's death, but the victim was evasive. The men became angry with the victim for avoiding their questions, which led to a heated argument. When they arrived at the park, the argument became physical. The Defendant did not remember "who struck who" first but admitted he hit the victim. According to the Defendant, "The fight began, but ended quickly. I remember telling Matt to stop hitting [the victim] and I grabbed my brother and we left the area in Matt Taylor's car." The Defendant acknowledged his behavior was "inappropriate" and concluded, "We were all, including [the victim], living a lifestyle that contributed to our immature actions."

The Defendant told the officer who prepared the presentence report that he began using alcohol and drugs at age twelve. As a juvenile, he committed several alcohol and traffic violations. He graduated from high school in 2002. He continued using drugs into adulthood, amassing several criminal convictions, which he attributed to his drug use. His adult record contained one conviction each for unlawful drug paraphernalia, simple possession, evading arrest with a risk of death, reckless endangerment, resisting stop and frisk, reckless driving; and it contained two convictions each for burglary, public intoxication, driving under the influence, and attempting to purchase alcohol under the age of twenty-one.

The Defendant's presentence report indicates he received a three-year sentence for each of his burglary convictions, which were committed about one month apart. These sentences, however, were ordered to be served concurrently. Although these sentences were initially suspended, they were reinstated after the Defendant violated the terms of his probation on three separate occasions. The Defendant violated the conditions of a separate probated sentence for his driving under the influence, second offense, conviction when he committed the assault in this case. An order was entered finding him in violation of the terms of this probated sentence on June 4, 2007. On August 16, 2007, an order was entered revoking the Defendant's probation and ordering him to serve his original sentence of eleven months, twenty-nine days at fifty percent. The order awarded him "credit for time served" from May 31, 2007, and onward. The Defendant was released from jail on December 22, 2007.

According to the Defendant, he finally realized at age twenty-four that drugs and alcohol were negatively affecting his and his friends' lives. He completed intensive

outpatient treatment at Pathfinders in Castalian Springs, Tennessee.

The Defendant had several diplomas from the Tennessee Technology Center, certifying him as a computer system specialist, a microcomputer specialist, and a networking technician. The Defendant also completed the requirements for certification as a Comptia A+ professional and a Microsoft Certified Professional. The Defendant told the officer preparing the report that he had a happy childhood and a good relationship with his family, to whom he attributed his success in overcoming his "immature" drug issues.

At the Defendant's sentencing hearing, Phyllis Duckworth, the officer who prepared the Defendant's presentence report, testified that she supervised the Defendant, who had been returned to probation for his driving under the influence conviction, from the time he pled guilty in August 2009 up until sentencing. During this time, the Defendant maintained employment, faithfully reported to Officer Duckworth, and tested negative for drugs. She said the Defendant consistently treated her politely and courteously, saying she had not "had any problems with him."

The officer testified that she discovered no new drug-related crimes in the Defendant's record committed after he completed rehabilitation in January 2007. She said the Defendant's two felony convictions, both for burglary, were committed in May 2002, the same month he graduated from high school.

Johnny James Turner, owner of a small construction company in Macon County, testified that the Defendant worked for him from June 2008 until about August or September 2009. He explained he had known the Defendant for a long time, and the Defendant's brother also worked for him. While working for Turner, the Defendant averaged a three to four-day work week, from about 6:00 a.m. to about 3:00 p.m each day. The Defendant made mortar, packed brick and block, and carried supplies to job sites. Turner said the Defendant showed up on time, "worked fine," and always did as he was asked.

Turner said that the Defendant was "a lot better than he was, as far as, staying out of trouble and all the drinking and stuff." He said that, due to the contact he had with the Defendant transporting the Defendant to and from work, he would have known if the Defendant had been drinking or was hungover.

The Defendant testified that, at the time of sentencing, he was living with his grandfather in Macon County. He acknowledged that he beat the victim because he held the victim responsible for the death of Greg Webb, a very close friend to the Defendant. He admitted he and his brothers planned to "beat up" the victim, but said they were unarmed when they attacked the victim.

4

The Defendant said he voluntarily, rather than as a condition of probation, completed drug rehabilitation therapy while on probation for driving under the influence. He said he chose to enter rehabilitation due to the "mental, financial, and criminal" trouble he was experiencing. He confirmed that, aside from his conduct in this case, he has had no new convictions since completing rehabilitation three years ago.

The Defendant explained that he strayed from his new-found sobriety and peaceful behavior when he assaulted the victim because he "was upset of the death of a friend and made a mistake." He had never lost a friend before, and he had known Webb for fifteen years. Just before the victim's beating, the Defendant visited Webb's family, who were "upset bad." The Defendant said that this visit solidified his determination to attack the victim. He said that he had not abused any substance during the two-and-a-half years that had passed since the assault.

The Defendant said he was arrested the same day of the victim's assault, May 31, 2007, and remained incarcerated in the Smith County Jail until December 22 of the same year, for a total of 205 days. After the Defendant was released he went to work for Turner's construction company, but he changed jobs as soon as possible because the masonry work was physically taxing. He went to work for Performance Foods in Lebanon, Tennessee, where he pulled supply orders for area restaurants. As of sentencing, he continued to work for Performance Foods and had recently gained health insurance benefits.

The Defendant said that his past had taught him to be more law-abiding: "I just know I have to go by the law whether I like it or not. That's what I've got to follow the rules."

On cross-examination, the Defendant acknowledged that, after his December 2007 release from jail, his father shot him in the presence of one of his brothers, Matt Beasley. He also acknowledged that, though he carries certification in several computer technology areas, he has been unable to gain employment in those fields given his criminal history.

The Defendant clarified that he met with the Webb family only two hours before attacking the victim. He agreed that, during these two hours, he and his brothers developed a plan to physically assault the victim. He confirmed that, though the victim initially fought back, he stopped fighting back once he fell to the ground, where he acknowledged he and his brothers continued to strike the victim. The Defendant agreed that the implications of his charges in this case "constantly" had been on his mind since his arrest.

On redirect examination, the Defendant said that, if granted probation, he would continue working and abiding with the law in order to keep his job and to pay the victim restitution.

5

At the conclusion of the hearing, the court sentenced the Defendant to six years in the Tennessee Department of Correction. It is from this judgment that the Defendant now appeals.

## II. Analysis

On appeal, the Defendant contends the trial court improperly denied alternative sentencing and failed to award him pre-trial jail credit. We address each contention below.

## A. Denial of Alternative Sentencing

The Defendant contends the trial court improperly denied him an alternative sentence. First, he argues the trial court incorrectly found that the Defendant's two prior felony convictions, for which he served concurrent sentences, were "evidence to the contrary" that he was a "favorable candidate" for an alternative sentence. He also argues the trial court did not consider the three factors that, under Tennessee Code Annotated section 40-35-103, a court must consider when determining whether to grant an alternative sentence. The Defendant argues that, upon the de novo review these errors would require, this Court should grant the Defendant an alternative sentence in light of his rehabilitative potential.

The State responds that the trial court properly denied the Defendant probation because it did so based upon an analysis of the factors set forth in Tennessee Code Annotated section 40-35-103.

When a defendant challenges the length, range, or manner of service of a sentence, this Court must conduct a de novo review on the record with a presumption that "the determinations made by the court from which the appeal is taken are correct." T.C.A. § 40-35-401(d). As the Sentencing Commission Comments to this section note, the burden is now on the appealing party to show that the sentencing is improper. T.C.A. § 40-35-401, Sentencing Comm'n Cmts. This means that if the trial court followed the statutory sentencing procedure, made findings of facts which are adequately supported in the record, and gave due consideration to the factors and principles relevant to sentencing under the 1989 Sentencing Act, T.C.A. section 40-35-103 (2009), we may not disturb the sentence even if a different result was preferred. *State v. Ross*, 49 S.W.3d 833, 847 (Tenn. 2001).

Due to the 2005 sentencing amendments, a defendant is no longer presumed to be a favorable candidate for alternative sentencing. *State v. Carter*, 254 S.W.3d 335, 347 (Tenn. 2008) (citing T.C.A. § 40-35-102(6) (2009)). Instead, a defendant not within "the parameters of subdivision (5) [of T.C.A. § 40-35-102], and who is an especially mitigated or standard offender convicted of a Class C, D or E felony, should be considered as a favorable candidate

6

for alternative sentencing options in the absence of evidence to the contrary." *Id*. (footnote omitted). T.C.A. § 40-35-102(6); 2007 Tenn. Pub. Acts 512. Additionally, we note that a trial court is "not bound" by the advisory sentencing guidelines; rather, it "shall consider " them. T.C.A. § 40-35-102(6) (emphasis added).

In conducting a de novo review of a sentence, we must consider: (1) the evidence, if any, received at the trial and the sentencing hearing; (2) the presentence report; (3) the principles of sentencing and arguments as to sentencing alternatives; (4) the nature and characteristics of the criminal conduct involved; (5) evidence and information offered by the parties on the mitigating and enhancement factors set out in Tennessee Code Annotated sections 40-35-113 and -114; (6) any statistical information provided by the administrative office of the courts as to sentencing practices for similar offenses in Tennessee; and (7) any statement the defendant made in the defendant's own behalf about sentencing. *See* T.C.A. § 40-35-210(b) (2009); *State v. Taylor*, 63 S.W.3d 400, 411 (Tenn. Crim. App. 2001). We must also consider the potential or lack of potential for rehabilitation or treatment of the defendant in determining the sentence alternative or length of a term to be imposed. T.C.A. § 40-35-103(5) (2009).

When sentencing the defendant to confinement, a trial court should consider whether:

(A) Confinement is necessary to protect society by restraining a defendant who has a long history of criminal conduct;

(B) Confinement is necessary to avoid depreciating the seriousness of the offense or confinement is particularly suited to provide an effective deterrence to others likely to commit similar offenses; or

(C) Measures less restrictive than confinement have frequently or recently been applied unsuccessfully to the defendant.

T.C.A. § 40-35-103(A)-(C) (2009).

If a defendant seeks probation, then that defendant bears the burden of "establishing [his] suitability." T.C.A. § 40-35-303(b) (2009). As the Sentencing Commission points out, "even though probation must be automatically considered as a sentencing option for eligible defendants, the defendant is not automatically entitled to probation as a matter of law." T.C.A. § 40-35-303 (2009), Sentencing Comm'n Cmts.

In this case, at the conclusion of the sentencing hearing, the trial court considered whether an alternative sentence was appropriate for the Defendant. It first noted that,

7

because the Defendant was convicted of a Class C felony, he "should be considered as a favorable candidate for alternative sentencing in the absence of evidence to the contrary." The trial court found, however, that the Defendant's two prior felony sentences were "evidence to the contrary":

> [N]umber one, I've got to consider evidence to the contrary. . . . [A] defendant's prior convictions shall be considered evidence to the contrary, and therefore a defendant who is being sentenced for a third or subsequent felony conviction involving separate periods of incarceration or supervision shall not be considered a favorable candidate. So that puts [the Defendant] in number two, he is not a favorable candidate for probation under the statute.
>
> So we start with that particular proposition.

The court applied only one mitigating factor to the Defendant's case, factor (13), which the court applied based upon the Defendant's efforts at rehabilitation. *See* T.C.A. § 40-35-113(13) (2009). It applied enhancement factors (1), (2), (5), (6), (10), and (13)(c) to the Defendant's case. *See* T.C.A. § 40-35-114 (2009). The trial court expressed its view that the Defendant's past and present criminal conduct overshadowed his efforts at rehabilitation:

> [S]ince this happened [the Defendant] has done, it looks like from the testimony, a good job at trying to get his life turned around.
>
> . . . .
>
> . . . [D]espite all the good things you do in your life, you still have to pay for the bad ones. It doesn't even out. You don't get to do something good to negate something bad. You pay for the bad.

The court noted that it considered the mitigating circumstances and enhancement factors in determining whether to grant an alternative sentence. The trial court sentenced the Defendant to six years and denied alternative sentencing without further explanation.

We agree with the trial court when it found that the Defendant's past periods of incarceration for felony offenses were "evidence to the contrary" that he was a favorable candidate for alternative sentencing. Tennessee Code Annotated section 40-35-102(6)(A) provides that defendants convicted of a Class C, D, or E felony shall be considered favorable candidates for alternative sentencing absent "evidence to the contrary." The Code then provides that such evidence to the contrary exists in the case of a "defendant who is being sentenced for a third or subsequent felony convictions involving separate periods of

8

incarceration or supervision." T.C.A. § 40-35-102(6)(A). The Code defines "separate periods of incarceration or supervision" as where a defendant "serves and is released or discharged from a period of incarceration or supervision for the commission of a felony prior to committing another felony." T.C.A. § 40-35-102(6)(B).

In this case, the Defendant was sentenced to two concurrent three-year sentences for two burglaries that he committed in May 2002. Thus, the Defendant's two prior felony convictions did not involve "separate periods of incarceration or supervision." As such, the trial court erred when it found the Defendant was not a favorable candidate for alternative sentencing based upon Tennessee Code Annotated section 40-35-102(6)(A)-(B).

The Defendant, despite pleading guilty as a Range I offender, is actually a Multiple Offender, given his two prior Class D felony convictions, and his conviction in this case is a Class C felony. Given that he pled guilty as a Range I Standard offender, he is a "favorable candidate" for alternative sentencing absent evidence to the contrary. T.C.A. § 40-35-102(6)(A). As discussed above, the Defendant's criminal record may properly be considered by the trial court as evidence to the contrary of his status as a favorable candidate. *See* T.C.A. § 40-35-106(B). In determining whether alternative sentencing is appropriate for the Defendant, we have considered the evidence presented at the sentencing hearing, the nature and circumstances of the aggravated assault, the Defendant's testimony at sentencing, enhancement factors (1), (2), (5), (6), (10), and (13)(c), and the relevant sentencing principles. *See* T.C.A. § 40-35-210 (2009).

In reviewing the Defendant's sentence of incarceration, we have also considered the Defendant's acknowledgment that his actions were "mistake[n]" and "immature" and his expressed desire to rehabilitate himself. *See* T.C.A. § 40-35-103. The Defendant completed a two-month drug rehabilitation in 2006 and reports that he has remained sober and drug-free since his arrest in this case, which the record does not contradict. However, in spite of the fact the Defendant completed rehabilitation mere months before the victim's assault, the Defendant was using alcohol when he attacked the victim. *See* T.C.A. § 40-35-103.

Tennessee Code Annotated section 40-35-103(1)(A) authorizes a court to deny alternative sentencing if "confinement is necessary to protect society by restraining a defendant who has a long history of criminal conduct." The Defendant has at least thirteen criminal convictions, including two felonies, dating back to when the Defendant was only sixteen years old. He admitted in his sentencing report that he began using drugs and alcohol at age twelve. The record, therefore, demonstrates that the Defendant has a "long history of criminal conduct." For these reasons, we conclude the Defendant's record indicates his confinement is necessary in order to protect society. *See* T.C.A. § 40-35-103(1)(A).

9

Further, the Defendant's past failures to conform to measures less restrictive than confinement also indicate confinement is necessary. *See* T.C.A. § 40-35-103(1)(C). The record shows the Defendant has violated the terms of previous probated sentences on at least four different occasions. The Defendant's failure to comply with previous alternative sentences further supports our conclusion that confinement is necessary. *See* T.C.A. § 40-35-103(1)(C). Finally, the nature and characteristics of the Defendant's conduct are evidence to the contrary that the Defendant is a favorable candidate for alternative sentencing: the Defendant planned with other men over a two-hour period to lure the victim to an isolated location and attack him. Even when the victim was lying motionless on the ground, the men continued to assault him. We conclude the planning leading up to this attack and the callous nature in which it was carried out further indicate confinement is necessary.

The Defendant has failed to carry his burden of proving his suitability for probation. T.C.A. § 40-35-303(b) (2009). We conclude the Defendant's history of criminal behavior and his past failures to comply with measures less restrictive than confinement require his confinement for the aggravated assault in this case. *See* T.C.A. § 40-35-103(1)(A), (C); *Kendrick*, 10 S.W.3d at 656. The Defendant is not entitled to relief on this issue.

## B. Pre-Trial Jail Credit

The Defendant next contends the trial court erred when it failed to award him pre-trial jail credit for the time he served between his May 31, 2007, arrest and his December 22, 2007, release, which amounted to a total of 205 days. He contends that he served the first portion of the jail sentence based only upon the offense in this case. On August 27, 2007, his probation for driving under the influence, second offense, was revoked and his original sentence was reinstated to be served at fifty percent. He argues that he should receive pre-trial jail credit for a portion of the 205 days he served and that, in any case, the trial court's failure to make any findings about the jail credit due the Defendant requires this Court to remand his case to the trial court for further findings.

The State responds that, by committing the instant offense, the Defendant was in violation of a probation sentence he received in 2006 for driving under the influence, second offense, and, as a consequence, his probation in that case was revoked on June 4, 2007. The State argues that the Defendant's incarceration arose from his probation violation rather than from his aggravated assault of the victim and that, as such, the trial court properly denied the Defendant jail credit.

Tennessee Code Annotated section 40-23-101(c) provides:

The trial court shall, at the time the sentence is imposed . . . render the

10

judgment of the court so as to allow the defendant credit on the sentence for any period of time for which the defendant was committed and held . . . pending arraignment and trial. The defendant shall also receive credit on the sentence for the time served . . . subsequent to any conviction[.]

T.C.A. § 40-23-101(c) (2009). The awarding of such jail credit is mandatory. *Stubbs v. State*, 216 Tenn. 567, 393 S.W.2d 150, 154 (Tenn. 1965). When time spent in jail "arises out of" an offense, pretrial jail credit is "a matter of right." *Trigg v. State*, 523 S.W.2d 375, 376 (Tenn. Crim. App. 1975). The primary purpose of awarding pretrial jail credits is to prevent discrimination against indigent defendants who are unable to make bond prior to trial, whereas their counterparts with financial means may obtain a bond. *See State v. Watkins*, 972 S.W.2d 703, 705 (Tenn. Crim. App. 1998).

The Defendant and his brothers attacked the victim on May 31, 2007. The same day, a warrant was issued for the Defendant's arrest based upon his involvement in this attack, and the Defendant was arrested. An indictment was soon returned against the Defendant for attempted first degree murder. Shortly after the Defendant's arrest, the Smith County General Sessions Court held a hearing and, based upon his conduct in this case, revoked the Defendant's probation for driving under the influence. The court ordered the Defendant to serve his original sentence at fifty percent, and it credited his sentence with the time he had served since his May 31 arrest in this case. On December 20, 2007, the trial court set the Defendant's bond in this case. The Defendant made bond and left jail on December 22, 2007.

At the close of evidence during the sentencing hearing, the trial court addressed the appropriate amount of the Defendant's 205-day jail service to apply as pre-trial jail credit: "Somebody will just have to figure [it] out because if I give him jail time he doesn't get credit twice." At the conclusion of the sentencing hearing, the trial court stated, "[The Defendant] can get credit for the DUI sentence as the record reflects on the revocation, and there may have to be some figuring out as to how much time he gets on that as opposed to this one." The trial court sentenced the Defendant to six years, but the judgment form does not reflect pre-trial jail credits. The judgment does, however, order the Defendant's sentence in this case to be served consecutively to his sentence for his previous Smith County driving under the influence conviction.

The Defendant was arrested on May 31, 2007, based upon his aggravated assault of the victim, and he remained in jail until December 22, 2007, when he made bond in this case. The Defendant's jail service, therefore, arose out of the Defendant's aggravated assault of the victim. As such, pretrial jail credit for this 205-day period is "a matter of right." *See Trigg v. State*, 523 S.W.2d at 376. The intervening order of the Smith County General

11

Sessions Court crediting the same 205-day period to the Defendant's reinstated sentence for driving under the influence does not affect this right. Therefore, the trial court's failure to credit the Defendant with jail credits contravenes the requirements of Tennessee Code Annotated section 40-23-101(c). We remand the case for the entry of a corrected judgment form to reflect the Defendant's entitlement to a 205-day jail credit.

### III. Conclusion

After a thorough review of the record and relevant authorities, we conclude the trial court properly denied alternative sentencing but failed to award the Defendant pretrial jail credit to which the Defendant was entitled. As such, we affirm the trial court's judgment in part, and we remand for entry of a corrected judgment crediting the Defendant with 205 days of pretrial jail credit.

_____
ROBERT W. WEDEMEYER, JUDGE